FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 16, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PETER WAGNER and TONYE-MARIE CASTAÑEDA,<br><br>    Plaintiffs,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 2:18-cv-00076-SAB<br><br>**ORDER DENYING THE UNITED STATES' MOTION TO PARTIALLY DISMISS CASE** |

Before the Court is the United States' Motion to Partially Dismiss Case For Lack of Subject Matter Jurisdiction, ECF No. 10. A hearing on the motion was held on October 31, 2018, in Spokane, Washington. Plaintiff was represented by John M. Colvin. The United States was represented by Rika Valdman.

## BACKGROUND FACTS

Plaintiffs are suing the United States to recover federal income tax they maintain was erroneously, illegally, or improperly assessed and collected from them for the taxable year 2012. They are seeking recovery of $859,557 plus interest that has accrued and continues to accrue.

Plaintiffs timely filed their 2012 federal income tax return that sought a refund of $1,364,363. They asked that they be refunded $500,000 and that the remainder ($864,363) be applied to the 2013 taxes. The Internal Revenue Service (IRS) did not pay the requested refund. Rather, on March 31, 2014, it informed

**ORDER DENYING THE UNITED STATES' MOTION TO PARTIALLY DISMISS CASE ~ 1**

Plaintiffs that it was holding the refund until it finished reviewing their tax returns and asked Plaintiffs to provide more information. ECF No. 12-2. On May 7, 2014, Plaintiffs sent a letter to the IRS, providing additional information.

In November, 2014, the IRS sent a letter disallowing some of the refund. ECF No. 10-1. Specifically, the IRS indicated it was allowing only $839,999 of the claim, and disallowing the remainder because "we are unable able to verify the total amount of your withholding based on information provided by the Social Security Administration." *Id.* The amount of the disallowed claim was $524,364.

Plaintiffs replied by letter on December 5, 2014, indicating they were requesting a formal Appeal to the findings and also requesting an oral hearing. ECF No. 12-2. They also provided additional information regarding the requested refund.

Nothing happened until May, 2016 when the IRS sent another letter, this time stating it was disallowing the entire $1,364,363 refund claim. ECF No. 10-1. Specifically, the letter stated:

> This letter is your notice that we've partially disallowed your claim for credit for the period shown above. We allowed only $.00 of the claim.

*Id.*

The letter also indicated that Plaintiffs were now going to owe interest and penalties. Although it did not explicitly say so in the letter, the determination of the $.00 allowance of the claim meant the IRS was also disallowing $839,999 of the refund claim that it has previously allowed as indicated in the November, 2014 letter. Because of this, Plaintiffs were now being assessed an outstanding liability of $859,557.84. As a result, the IRS took $335,871 from the 2014 refund and applied it to the 2012 tax liability since this amount had come from Plaintiffs' request to forward the remainder of the 2012 refund claim to the next year's tax bill.

**ORDER DENYING THE UNITED STATES' MOTION TO PARTIALLY DISMISS CASE ~ 2**

In its Motion, the United States argues that while Plaintiffs' suit is timely with respect to their claim for $355,871, it is untimely with respect to the remaining amount. It maintains the claim for refund of the amount of $523,686 was not filed within two years after the IRS disallowed Plaintiffs' refund claim, as required by 26 U.S.C. § 6532. Therefore, the Court lacks subject matter jurisdiction to hear Plaintiffs' refund claim for $523,686, but has jurisdiction to hear the matter regarding Plaintiffs' refund claim for $355,871.

## MOTION STANDARD

A jurisdictional challenge under Rule 12(b)(1) may be made either facial or factual. *Safe Air for Everyone v. Meyer et al.*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the challenger asserts the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. *Id.* In contrast, in a factual attack, the moving party disputes the truth of the allegations that, by themselves, would invoke federal jurisdiction. *Id.* When considering a motion to dismiss pursuant to Rule 12(b)(1), the district court is not restricted to the face of the pleadings and "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir.1983) (consideration of material outside the pleadings did not convert a Rule 12(b)(1) motion into one for summary judgment). Thus, the Court may consider extrinsic evidence to the extent it aids in the resolution of this jurisdictional dispute.

## SUBJECT MATTER JURISDICTION

To confer subject matter jurisdiction in an action against a sovereign, there must be: (1) "statutory authority vesting a district court with subject matter jurisdiction," and (2) "a waiver of sovereign immunity." *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007).

**ORDER DENYING THE UNITED STATES' MOTION TO PARTIALLY DISMISS CASE ~ 3**

28 U.S.C. § 1346(a)(1) confers the power of the federal courts to hear claims for recovery of taxes paid:

> a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
> (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

It is well-settled the United States cannot be sued without its consent. *United States v. Lee*, 106 U.S. 196, 222 (1882); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983)("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

As the U.S. Supreme Court explained:

> A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text. Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.

*Lane v. Pena,* 518 U.S. 187, 192 (1996) (citations omitted).

## ANALYSIS

The United States maintains it has waived sovereign immunity only as to $335,871 of the claimed refund amount, relying on § 6532(a), which states:

> a) Suits by taxpayers for refund.--
> (1) General rule.--No suit or proceeding under section 7422(a)[1] for the recovery of any internal revenue tax, penalty, or other sum,

---

[1] U.S.C. § 7422(a) provides:
(a) No suit prior to filing claim for refund.--No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been

**ORDER DENYING THE UNITED STATES' MOTION TO PARTIALLY DISMISS CASE ~ 4**

shall be begun before the expiration of 6 months from the date of
filing the claim required under such section unless the Secretary
renders a decision thereon within that time, nor after the expiration of
2 years from the date of mailing by certified mail or registered mail by
the Secretary to the taxpayer of a notice of the disallowance of the part
of the claim to which the suit or proceeding relates.
    (2) Extension of time.--The 2-year period prescribed in
paragraph (1) shall be extended for such period as may be agreed
upon in writing between the taxpayer and the Secretary.
    (3) Waiver of notice of disallowance.--If any person files a
written waiver of the requirement that he be mailed a notice of
disallowance, the 2-year period prescribed in paragraph (1) shall begin
on the date such waiver is filed.
    (4) Reconsideration after mailing of notice.--Any consideration,
reconsideration, or action by the Secretary with respect to such claim
following the mailing of a notice by certified mail or registered mail
of disallowance shall not operate to extend the period within which
suit may be begun.

If a provision setting forth a statute of limitations is jurisdictional, a litigant's failure to comply with the bar deprives a court of all authority to hear a case. *United States v. Kwai Fun Wong*, __ U.S. __, 135 S.Ct. 1625, 1631 (2015). In such a case, a court must enforce the limitation even if the other party has waived any timeliness objection and must do so even if equitable considerations would support extending the prescribed time period. *Id.* Because the consequences are so drastic, the United States must clear a high bar to establish that a statute of limitations is jurisdictional. *Id.* at 1632. "[A]bsent such a clear statement, . . . 'courts should treat the restriction as nonjurisdictional.'" *Id.* (citation omitted). "Congress must do something special, beyond setting an exception-free deadline,

---

excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

**ORDER DENYING THE UNITED STATES' MOTION TO PARTIALLY DISMISS CASE ~ 5**

to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it." *Id.*

In *Volpicelli v United States*, 777 F.3d 1042 (9th Cir. 2015), the Ninth Circuit held that 26 U.S.C. § 6532(c) was not jurisdictional. *Id.* at 1047. There, the plaintiff sued the United States for wrongfully seized $13,000 in cash from him when he was only 10 years old. *Id.* at 1043. The Circuit held the limitations period for filing wrongful levy suit against the IRS, which requires a taxpayer to file such suit within nine months of the levy, was not jurisdictional, and therefore was subject to equitable tolling. *Id.* at 1047. The Circuit read that section as *not* providing a clear statement that Congress intended this provision to be jurisdictional. *Id.* at 1044. It reasoned that section 6532(c) did not cast its filing deadline in "jurisdictional" terms any more than the statute at issue in *Henderson* did—a statute the U.S. Supreme Court held to be non-jurisdictional.[2] *Id.*

It believed Congress signaled the non-jurisdictional nature of § 6532(c) by placing it in a subtitle of the Internal Revenue Code labeled "Procedure and Administration," while at the same time enacting a separate jurisdiction-conferring provision (28 U.S.C. § 1346(e)) and placing that provision in a chapter titled "District Courts; Jurisdiction." *Id.* It concluded that Congress' placement decision indicates that it viewed § 6532(c)'s limitations period as a mere "claim-processing rule" rather than a jurisdictional command. *Id.* The Circuit reasoned that even if

---

[2] *Henderson ex rel Henderson v. Shineseki*, 562 U.S. 428 (2011). In *Henderson*, the U.S. Supreme Court held the statute that permitted a veteran to appeal the Board of Veterans' Appeals denial of his claim to the United States Court of Appeals for Veterans Claims was not jurisdiction. *Id*. at 438. The statute required that the notice of appeal must be filed within 120 days after the date when the Board's final decision is properly mailed. 38 U.S.C. § 7266(a). *Id*. at 431.
The U.S. Supreme Court held that a veteran's failure to file a notice of appeal within the 120–day period did not have "jurisdictional" consequences, and thus, was subject to equitable toiling. *Id*. at 441.

**ORDER DENYING THE UNITED STATES' MOTION TO PARTIALLY DISMISS CASE ~ 6**

§ 6532(c)'s limitations period were a condition on the United States' waiver of sovereign immunity, that fact alone would not render it "jurisdictional" for purposes of deciding whether the *Irwin* presumption applies.[3] *Id.* at 1045.

Notably, it declined to apply the reasoning set forth in *United States v. Brockman,* 519 US. 347 (1997) to § 6532(c), finding this section did not share in the characteristics of § 6511.[4] *Id.* at 1046. It noted the limitation was purely

---

[3] The *Irwin* presumption stands for the proposition that a rebuttable presumption that filing deadlines may be equitably tolled exists, unless Congress provides otherwise. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990). The Ninth Circuit had previously held that *Irwin*'s presumption may be applied only if the claim asserted against the government is analogous to a claim that could be asserted against a private party. *See Rouse v. United States Dep't of State*, 567 F.3d 408, 416 (9th Cir. 2009). In *Volpielli*, the Circuit analogized a wrongful levy action to being akin to the traditional common law torts of conversion and trespass to chattels, claims that have long been asserted against private parties. *Id.* at 1045.

[4] *United States v. Brockman* held that equitable tolling did not apply to 26 U.S.C. § 6511, which provides the statute of limitations for filing a refund with the IRS. 519 US. 347 (1997). It concluded that section 6511 sets forth its time limitations in a highly detailed technical manner, reiterates them several times in different ways, imposes substantive limitations, and sets forth explicit exceptions to its basic time limits that do not include "equitable tolling." *Id.* at 350. Notably, § 6511 sets forth explicit exceptions to its basic time limits, and those very specific exceptions do not include "equitable tolling." *Id.* at 351;s*ee* § 6511(d) (establishing special time limit rules for refunds related to operating losses, credit carrybacks, foreign taxes, self-employment taxes, worthless securities, and bad debts).

The *Brockman* court noted that ordinarily limitations statutes use fairly simple language, which one can often plausibly read as containing an implied "equitable tolling" exception. *Id.* at 350. It reasoned that to read such tolling into § 6511 would require one to assume an implied tolling exception virtually every time a number appears in § 6511, and would require the tolling of that section's substantive limitations on the amount of recovery—a kind of tolling for which there is no direct precedent. *Id.* at 352.

It relied on the fact that the Tax Code provides that refunds that do not comply with these limitations "shall be considered erroneous," § 6514, and specifies procedures for the Government's recovery of any such "erroneous" refund payment. §§ 6532(b), 7405. *Id.* at 351.

**ORDER DENYING THE UNITED STATES' MOTION TO PARTIALLY DISMISS CASE ~ 7**

procedural and had no substantive impact on the amount of recovery. *Id.* It rejected the argument that *Brockman* should apply to § 6532(c) merely because both sections were found in the Tax Code. *Id*. at 1047. Finally, the Ninth Circuit recognized that while other circuits have held that § 6532(c)'s limitations period is not subject to equitable tolling, it believed its own binding precedent mandated that it find § 6532(c) not jurisdictional. *Id.* at 1047, n.3.

Following the reasoning set forth in *Volpicelli*, the Court finds 26 U.S.C. § 6532(a) is not jurisdictional because the provision does not provide a clear statement that Congress intended this provision to be jurisdictional; *see also Kwai Fun Wong*, 135 S.Ct. at 1632 (instructing that courts should not conclude that a time bar is jurisdictional unless Congress provides a "clear statement" to that effect; in applying that clear statement rule, courts should keep in mind that most time bars, even if mandatory and emphatic, are nonjurisdictional; therefore, Congress must do something special to tag a statute of limitations as jurisdictional and so prohibit a court from tolling it).

First, Congress' separation of the filing deadline in § 6532(a) from the waiver of sovereign immunity found in 28 U.S.C. § 1346(a)(1), as well as the placement of § 6532 in the Tax Code under subtitle of the Internal Revenue Code labeled "Procedure and Administration, is a strong indication that the time bar is not jurisdictional. Second, the time limitation is purely procedural and has no substantive impact on the amount of recovery. It speaks only to a claim's timeliness and not to a court's power. Third, the recovery of a wrongfully withheld

---

Notably, it did not find any counterindications of congressional intent. *Id.* at 353. It believed that reading "equitable tolling" into the statute could create serious administrative problems by forcing the IRS to respond to, and perhaps litigate, large numbers of late claims. *Id.* It assumed, at the least, that Congress would likely have wanted to decide explicitly whether, or just where and when, to expand the statute's limitations periods, rather than delegate to the courts a generalized power to do so wherever it appears that equity so requires. *Id.*

**ORDER DENYING THE UNITED STATES' MOTION TO PARTIALLY DISMISS CASE ~ 8**

refund is akin to the traditional common law torts of conversion. Fourth, the deadline set forth in § 6532(a) is not cast in jurisdictional terms and the language/text used does not have any jurisdictional significance. Finally, the text does not define a federal court's jurisdiction over tort claims generally, does not address its authority to hear untimely suits, or in any way limit its usual equitable powers.

The next question, then, is whether Plaintiffs' claim before this Court for $859,557, plus interest, is timely. The answer is yes. Even with assistance from counsel, it is very confusing to the Court when exactly Plaintiffs' refund claims for the 2012 tax return were decided, and what amounts were covered by the first and second letters. The record suggests that the first time Plaintiffs were aware that the $839,999 refund claim, which had been accepted by the IRS as of November, 2014, was being disallowed was from the May, 2016 letter. Even then, the IRS did not explicitly notify Plaintiffs that this was the case. Instead, the IRS simply indicated to Plaintiffs that their entire claim, which presumably was for $1,364,363.00, was being disallowed.

When Plaintiffs received the letter in November, 2014, they were informed the IRS allowed $839,999.00 of their $1,364,363.00 refund. There would have been no reason to appeal this decision, except to appeal the decision to not allow the claim for $524,364, which Plaintiffs did. Fast forward to May, 2016, after being informed that their entire refund claim was being rejected, the amount of their refund claim being rejected for the 2012 tax return returned to the original amount of $1,364,363.00. By bringing suit in district court for only $839,999 plus interest charged, Plaintiffs are implicitly agreeing that the claim for $524,364 is time-barred. Because that amount was addressed by the November, 2014 letter, Plaintiffs had two years from the date of the letter to bring their claim to the district court for that amount.

**ORDER DENYING THE UNITED STATES' MOTION TO PARTIALLY DISMISS CASE ~ 9**

In May, 2016, however, Plaintiffs were informed implicitly that they no longer were going to be receiving the $839,999 refund. Instead, they now owed interests and penalties. And the letter informed them that they had two years from the date of the letter to appeal this decision. It is this decision—the disallowal of the $839,999 and interest and penalties—that is the underlying basis for Plaintiffs' claims before this Court.

The United States attempts to manufacture a limit regarding Plaintiffs' claim by arguing that the Court only has jurisdiction over $335,871, which is the amount of the overpayment that had been credited to the 2014 taxable year but was taken away and credited to the 2012 tax liability. However, the only reason this amount was taken by the IRS, and not the $859,357 owed, was because there was an outstanding, yet unexplained credit of $523,686.45 on Plaintiff's account that apparently should not have been there. The United States' explanation is that the IRS did not immediately adjust the account transcript for the taxable year 2012 to reflect the disallowed refund amount.[5] But if it had timely made the adjustment and Plaintiffs had no credits, then presumably it would have taken more than $335,871 from the 2014 taxable year to pay the outstanding 2012 tax. If that credit was properly adjusted pursuant to the November 2014 letter, that is, the credit was subtracted from Plaintiff's account, the logical conclusion would be that the IRS would have taken $859,557 from later tax returns to make up the difference for the now disallowed claim plus the interest charged. Under the United States' theory, Plaintiffs would have two years from the date of the letter to appeal this decision to the district court. The fact that there happened to be a credit on the account that was similar to (although not the same amount as) the 2014 disallowed claim,

---

[5] The amount of the disallowed claim set forth in the November, 2014 letter was $524,364. It is not clear to the Court whether the $523,686.45 credit was a result of the disallowance of the claim or if it reflects a credit for another reason. The record is silent as to the discrepancy between the two numbers.

**ORDER DENYING THE UNITED STATES' MOTION TO PARTIALLY DISMISS CASE ~ 10**

should not limit Plaintiffs' ability to appeal the decision of the IRS to disallow the $839,999 claim as set forth in the November, 2016 letter. The amount of Plaintiffs' claim before this Court should not be artificially limited due to the IRS's own accounting delays or errors.

Notably, the United States acknowledges the credit of $523,686 does not accurately reflect the $524,364 credit that was disallowed by the November, 2014 letter. ECF No. 10 at 5. ("Therefore, to the extent that Plaintiffs are seeking refund of any amount up to $524,364, including the $523,686 that is part of this refund suit, their claim is untimely and this Court has no subject matter jurisdiction over it."). There is no explanation in the record as to when, where, or why this amount appeared as a credit. Clearly, it does not match the disallowed refund claim of $524,364. This appears to be nothing more than an arbitrary number that the United States is now seeking to use to reduce Plaintiffs' claim before this Court.

As said before, Plaintiffs are not challenging the IRS's decision to disallow the refund of $524,364. Indeed, if they were, presumably in this lawsuit their requested relief would be $1,364,363, plus interest. And if that were the case, the Court would agree with the United States that Plaintiffs' claim for $524,364 would be untimely. But it is clear Plaintiffs are not bringing such a claim. Rather, they are challenging the IRS's decision to disallow $839,999 of the $1,364,363 refund claim—a decision to which they were notified of in May, 2016. Consequently, Plaintiffs' claim before the Court is timely.

Alternatively, even if the time limits for the $839,999 portion of the refund claim started to accrue on November, 2014, equitable considerations set forth above, including the fact that Plaintiffs were informed that $839,999 of the requested refund claim was not going to be allowed less than 6 months before the statute of limitations expired, require the tolling of the statute of limitations. As such, the Court has jurisdiction to hear the entire amount of Plaintiffs' refund claim under 26 U.S.C. § 6532(a).

**ORDER DENYING THE UNITED STATES' MOTION TO PARTIALLY DISMISS CASE ~ 11**

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion to Partially Dismiss Case For Lack of Subject Matter Jurisdiction, ECF No. 10, is **DENIED**.

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this Order and forward copies to counsel.

**DATED** this 16th day of November 2018.



Stanley A. Bastian
United States District Judge

**ORDER DENYING THE UNITED STATES' MOTION TO PARTIALLY DISMISS CASE ~ 12**